United States District Court
for the
Southern District of Florida

| | |
|---|---|
| MSP Recovery Claims Series, LLC, and others, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 20-21573-Civ-Scola ) |
| Nationwide Mutual Insurance Company and others, Defendants. | ) ) ) |

## Order Granting Joint Motion to Dismiss

Plaintiffs MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; and Series PMPI, a designated series of MAO-MSO Recovery II, LLC seek to recover, through this putative class action, reimbursement from twenty-five Defendant insurers (the "Insurance Companies") for amounts the Plaintiffs claim to be owed as a result of Medicare payments the Plaintiffs' assignors, and other Medicare Advantage Organizations, made to or on behalf of the Insurance Companies' insureds. (Compl., ECF No. 1.) The Plaintiffs claim entitlement to these funds as provided for under the Medicare Secondary Payer Act (the "MSPA"). The Insurance Companies, jointly, seek dismissal of the complaint because the Plaintiffs have failed to establish the Court's personal jurisdiction over the Insurance Companies or, if the Court finds it does have jurisdiction, because the Plaintiffs have failed to state a claim to relief that is plausible on its face. (Defs.' Mot., ECF No. 23.) The Insurance Companies, alternatively, maintain this case should be transferred to the United District Court for the Southern District of Ohio. (*Id.* at 26–23.) The Plaintiffs counter the Court does have jurisdiction over the Insurance Companies, that venue is proper in this Court, and that they have stated a claim for relief under the MSPA. (Pls.' Resp., ECF No. 31.) The Insurance Companies have timely replied. (Defs.' Reply, ECF No. 34.) After careful review, the Court finds the Plaintiffs have failed to carry their burden of establishing the Court's personal jurisdiction over the Insurance Companies and, therefore, **grants** their motion (**ECF No. 23**) on that basis, dismissing the complaint, without prejudice.

1. **Background**

The Insurance Companies are all auto or other liability insurers that provide either "no-fault" or "med-pay" insurance to their customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees"). (Compl., ¶ 2.) The Plaintiffs say that under the Insurance Companies'

contractual obligations with their insureds, and under state law, the Insurance Companies must provide coverage for their insureds' accident-related medical expenses on a "no-fault" basis. (*Id.*) The Insurance Companies are considered to have primary responsibility, under the MSPA, regarding Enrollee medical expenses occasioned by car or other accidents. (*Id.*) That is, Medicare's responsibility to pay for the accident-related medical expenses of the Enrollees is secondary to the Insurance Companies' responsibility. (*Id.*) Medicare and Medicare Advantage Organizations, however, routinely pay these medical expenses, albeit on a conditional basis. (Pls.' Resp. at 2.) These payments are typically made "as an accommodation" for the Enrollees, subject to being recouped from the primary payer, so long as the payment is for a service that was, or should have been, covered by a primary insurer. (*Id.* at 2–3.) The Plaintiffs complain, generally, "that primary payers like Defendants" "rarely honor their obligations and, instead, take steps to ensure the burden for those accident-related medical expenses is borne by Medicare and MA Plans." (*Id.* ¶ 6.)

Various Medicare Advantage Plans that provide Medicare benefits have assigned their rights to recover these payments, under the MSPA, to the Plaintiffs. (*Id.* ¶ 3.) The Plaintiffs say they use a proprietary system to process health-care claims data from various sources in order to track down which primary payers have failed to honor their reimbursement obligations under the MSPA. (*Id.* ¶ 9.)

Sixteen of the Insurance Companies have principal places of business in Ohio; four in Iowa; and one each in Texas, Pennsylvania, Arizona, New Mexico, and Michigan. (*Id.* ¶¶ 17–41.) The Plaintiffs say the Insurance Companies "have systematically and uniformly failed to pay or reimburse conditional payments by Plaintiffs' assignors and Class Members on behalf of Enrollees for accident-related medical expenses." (*Id.* ¶ 51.) The Plaintiffs have provided a spreadsheet that they say identifies "numerous instances where Defendants admitted . . . they were obligated . . . to provide primary payment on behalf Enrollees." (*Id.* ¶ 63; Ex. A., ECF No. 1-1.) The Plaintiffs also describe this list as identifying "instances where Defendants have failed to pay and/or reimburse conditional payments made Plaintiffs' assignors for accident-related expenses." (*Id.* ¶ 66.)

The Plaintiffs describe with more detail three "Exemplar No-Fault Claims" and two "Exemplar Settlement Claims." The three exemplar no-fault claims involve Enrollees of MA Plans issued and administered by AvMed, Inc. (*Id.* ¶¶ 76, 85, 94.) In the first exemplar, Enrollee, A.H. was "injured in an accident" on February 3, 2019. (*Id.* ¶ 77.) A.H.'s accident-related medical costs and expenses were purportedly covered under no-fault policies issued by Defendants Nationwide Mutual Insurance Company and Nationwide Insurance Company of America. (*Id.* ¶ 78.) A.H. received medical services on February 3 and 4, 2019.

(*Id.* ¶ 80.) AvMed paid $3,451.81 for these services. (*Id.*) The Plaintiffs say that Defendants Nationwide Mutual Insurance Company and Nationwide Insurance Company of America "admitted their primary payer status related to payment and/or reimbursement of A.H.'s accident-related medical expenses" and yet, nonetheless, failed to reimburse AvMed. (*Id.* ¶¶ 81–2.)

The second and third no-fault exemplars are nearly identical to the first. These exemplars involve two other Enrollees, P.J. and H.R., respectively. They too were each "injured in an accident" and required medical care: P.J. in 2016 and H.R. in 2018. (*Id.* ¶¶ 86, 89, 95, 98.) Both Enrollees' medical expenses were purportedly covered under a no-fault policy issued by Defendant Nationwide Mutual Insurance Company. (*Id.* ¶¶ 87, 96.) AvMed paid $2,260.73 to P.J.'s medical providers and $13,759.10 for H.R.'s. (Compl. ¶¶ 89, 98.) As in the first exemplar, the Plaintiffs maintain Defendant Nationwide Insurance Company "admitted its primary payer status related to payment and/or reimbursement of [the Enrollees'] accident-related medical expenses" and yet, nonetheless, failed to reimburse AvMed. (*Id.* ¶¶ 91–2, 100–01.)

The two exemplar settlement claims also both involve AvMed and Nationwide Mutual Insurance Company. In those cases, two other Enrollees, K.M. and L.B., were both, like in the no-fault exemplars, each "injured in an accident": K.M. in 2019 and L.B. in 2015. (*Id.* ¶¶ 104, 114.) In each case, the alleged tortfeasor responsible for the accident was insured by Nationwide Mutual Insurance Company. (*Id.* ¶¶ 105, 115.) AvMed paid $450.86 to K.M.'s medical providers and $328.84 to L.B.'s. (*Id.* ¶¶ 107, 117.) Nationwide ultimately settled with both K.M. and L.B., on behalf of their respective tortfeasors, making payments to both. (*Id.* ¶¶ 108, 118.) As in the three no-fault exemplars, the Plaintiffs maintain Defendant Nationwide Insurance Company "admitted its primary payer status related to payment and/or reimbursement of [the Enrollees'] accident-related medical expenses" and yet, nonetheless, failed to reimburse AvMed. (*Id.* ¶¶ 109–10, 119–20.)

**2. Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Personal jurisdiction is reviewed "as it relates to each defendant separately." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "[V]ague and conclusory allegations . . . are insufficient to establish a

prima facie case of personal jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).

Two categories of jurisdiction are recognized under the Fourteenth Amendment's due process clause: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction over foreign business entities is recognized "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (cleaned up). By contrast, specific jurisdiction is claim specific and "requires the suit to arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1776 (2017) (cleaned up). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

Whether the court has specific jurisdiction over a defendant is governed by a two-part analysis. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Services, LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011); *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

### 3. Discussion

### A. The Court lacks general jurisdiction over any of the Insurance Companies because none of them is "at home" in Florida.

The Insurance Companies point out the lack of factual allegations in the complaint supporting general personal jurisdiction. (Defs.' Mot. at 18.) The Plaintiffs do not respond directly to this criticism, but, instead, point to the ubiquity of the Nationwide brand across the country. (Pls.' Resp. at 7–8.) The Plaintiffs also rely on the Insurance Companies' engagement "in the highly regulated insurance industry of . . . Florida (and every other state)." (*Id.* at 8.) The Court readily agrees with the Insurance Companies that the Plaintiffs have failed to allege facts supporting general personal jurisdiction.

As the United States Supreme Court has made clear, the paradigm bases for general jurisdiction over a corporation are (1) its place of incorporation and (2) its principal place of business. *Daimler*, 571 U.S. at 137. It is only under "exceptional" circumstances that a court can exercise general personal

jurisdiction over a corporation elsewhere. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). In such cases it must be shown that the corporate defendant's operations in another forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quoting *Daimler*, 571 U.S. at 137). The Plaintiffs do not allege Florida is one of the two paradigm forums for exercising general jurisdiction over any of the Insurance Companies. (Compl. ¶¶ 17–41.)

Nor have the Plaintiffs alleged facts in their complaint that would allow the Court to infer the presence of any exceptional circumstances that would otherwise trigger the Court's general personal jurisdiction over any of the Insurance Companies. Instead, the Plaintiffs have set forth only conclusory allegations that the Insurance Companies (1) have contracted to insure a person, property, or risk in Florida (*id.* ¶ 44); (2) operate, conduct, and carry on business ventures in Florida (*id.*); (3) "maintain sufficient minimum contacts with the State of Florida so as to not offend traditional notions of fair play and substantial justice" (*id.* ¶ 45); (4) "maintain and carry on systematic and continuous contacts," "regularly transact business" and "avail themselves of the benefits" in Florida (*id.*); (5) "have purposefully availed themselves of the privilege of conducting activities within" Florida (*id.*); (6) "were authorized to do or . . . engage in business" in Florida (*id.* ¶ 46); and (7) "offer insurance policies that contain no-fault and/or medical payments coverage for any accident-related medical expense within . . . Florida and elsewhere" (*id.*) None of these bare allegations, alone or taken together, comes even close to establishing fact that show any of the Insurance Companies' operations in Florida are "so substantial and of such a nature as to render the corporation at home in" Florida. Furthermore, the Plaintiffs' argument that general jurisdiction can be exercised over the Insurance Companies because the conduct at issue simply "involves" Florida in some way, is similarly deficient. (Pls.' Resp. at 8.) Accordingly, the Plaintiffs have failed to carry their burden of alleging facts sufficient to make out a prima facie case that the Court has general personal jurisdiction over any of the Insurance Companies

### B. The Court lacks specific jurisdiction over the Insurance Companies.

The Insurance Companies argue the Plaintiffs have also failed to demonstrate that any of the Insurance Companies are subject to specific personal jurisdiction. (Defs.' Mot. at 19–24.) In support of their position, the Insurance Companies maintain (1) the Plaintiffs' claims do not arise out of or relate to any of the Insurance Companies' Florida activities; (2) none of the Insurance Companies purposefully availed themselves of Florida's privileges by conducting activities in Florida; and (3) the exercise of specific jurisdiction over

any of the Insurance Companies would be unreasonable. (*Id.*) The Plaintiffs counter by pointing to their allegations that the Insurance Companies are licensed to do business in Florida and processed claims involving Florida resident insureds or injuries that appear to have occurred in Florida. (Pls.' Resp. at 9–11.) The Court agrees with the Insurance Companies that the Plaintiffs have failed to allege facts showing that the *Plaintiffs'* claims themselves arise out of any of the Insurance Companies contacts with Florida. Based on this conclusion, the Court refrains from weighing in on the Insurance Companies' other two arguments.

In their complaint, the Plaintiffs point to two provisions of Florida's long-arm statute that they say establish the Court's specific jurisdiction over the Insurance Companies. Under those portions of the statutory provisions the Plaintiffs refer to, a defendant will be found to have submitted itself to Florida jurisdiction for "any cause of action arising from" (1) "[o]perating, conducting, . . . or carrying on a . . . business venture in" Florida; or (2) "[c]ontracting to insure a person, property, or risk located within [Florida] at the time of contracting." (Fla. Stat. § 48.193(1)(a)(1) and (1)(a)(4)); Compl. ¶44.) While the complaint certainly sets forth facts arguably showing that the Insurance Companies, or at least some of them, have (1) operated, conducted, or carried on a business venture in Florida; or (2) contracted to insure people or risks in Florida, the Plaintiffs utterly fail to connect *their own particular claims* against the various Insurance Companies to those Florida-related acts. That is, the Plaintiffs fail to allege facts showing that their causes of action actually "arise from" those acts. *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–56 (11th Cir. 2013) (requiring a court's long-arm statute inquiry to "focus on the direct causal relationship between the defendant, the forum, and the litigation") (cleaned up).

To be sure, this case arises out of the Insurance Companies' alleged failure to reimburse the Plaintiffs' assignors for claims the assignors purportedly made on behalf of the Insurance Companies' insureds. (Pls.' Resp. at 1–11.) It does not, however, arise out of the Insurance Companies' business or contracts with their insureds themselves. *See, e.g.*, *Hung Kang Huang v. Carnival Corp.*, 1:12-CV-23345-UU, 2013 WL 12333470, at *3 (S.D. Fla. Feb. 14, 2013) (Ungaro, J.) (concluding that Florida's long-arm statute was not satisfied where the plaintiff's cause of action did not arise directly from other, tangential contacts the defendants had with Florida). The Plaintiffs do not make any allegations that the events that actually triggered this lawsuit—that is, the Insurance Companies' failures to reimburse the Plaintiffs' assignors—occurred in Florida at all. Indeed, all indications are that any alleged failure to reimburse affirmatively did *not* occur in Florida. Accordingly, the Court finds the Plaintiffs have failed to allege

facts sufficient to make out a prima facie case that the provisions of the long-arm statute they rely on have been satisfied. Because the Plaintiffs do not clear this first hurdle, the Court need not evaluate whether the exercise of jurisdiction over the Insurance Companies would otherwise comport with due process and traditional notions of fair play and substantial justice.

### 4. Conclusion

As set forth above, the Plaintiffs have failed to meet their burden of alleging facts supporting either general or personal jurisdiction over any of the Insurance Companies in this case. The Court therefore **grants** the Insurance Companies' joint motion to dismiss for a lack of personal jurisdiction (**ECF No. 23**).[1] Accordingly, the Court **dismisses the complaint without prejudice** and directs the Clerk to **close** this case.

Furthermore, the Court denies the Plaintiffs' request for leave to amend, inserted, as an afterthought, at the end of their opposition to the Insurance Companies' motion: the request is both procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.,* 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up).

The Court **denies** any other pending motions **as moot**.

**Done and ordered** at Miami, Florida, on February 2, 2021.

_____
Robert N. Scola, Jr.
United States District Judge

---

[1] Because the Court dismisses the complaint based on a lack of personal jurisdiction, it declines to address the Insurance Companies' other arguments supporting either transfer or dismissal for a failure to state a claim.